UINTA TUNNEL MIN. & TRANSP. CO. v. CREEDE & CRIPPLE CREEK MIN. & MILL. CO.

(Circuit Court of Appeals, Eighth Circuit. November 18, 1902.)

No. 1,762.

1. MINING—TUNNEL-SITE CLAIMANT NEED NOT ADVERSE LODE CLAIM.

The claimant of a tunnel site located across lode claims is not required by sections 2325, 2326, Rev. St. [U. S. Comp. St. 1901, pp. 1429, 1430], to file an adverse claim, when applications for patents of the lode claims are made, in order to protect his rights in those cases in which his inter-

est in the lode claims is so uncertain, contingent, and intangible that it cannot be fairly litigated when the applications are made.

**2.** SAME—PATENTS OF LODE CLAIMS SUBJECT TO RIGHTS OF CLAIMANTS OF TUNNEL SITES LOCATED BEFORE THE ENTRIES.

Patents of lode mining claims based on entries made after the location of a claim for a tunnel site across them are subject to the rights of the claimant of the tunnel site in cases in which his rights therein were so uncertain, contingent, and intangible that they could not be fairly litigated when the applications for the patents were made.

**3.** SAME—LAND DEPARTMENT—ENTRIES AND PATENTS—ESTOPPEL.

The judgments of the land department permitting entries of land and the patents based upon those entries bind all the parties to the proceedings which resulted in them and all those claiming interests acquired from such parties subsequent to the entries. But they do not estop those who were not, and were not required to be, parties to the proceedings from establishing by the customary evidence the truth relative to any fact material to their claims in any litigation between them and the holders under the patents.

**4.** SAME—ENTRIES AND PATENTS OF LODE CLAIMS—NO ESTOPPEL OF THE OWNER OF PRIOR TUNNEL CLAIM.

Entries and patents of lode mining claims in proceedings to which a claimant of a tunnel site, located across them prior to the entries, was not, and was not required to be, a party will not estop him from establishing by the testimony of witnesses who know, and by other customary evidence, the fact that no discoveries of lodes or mines of mineral had been made in the lode claims before the claim for the tunnel site was located across them.

**5.** SAME—CERTIFICATES OF LOCATION—EVIDENCE OF RECITALS.

Certificates of location of mining claims are not conclusive evidence of the facts which they recite against parties who claim the land they describe adversely to their makers.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

The writ of error in this case challenges the trial of an issue involving the rights of the respective parties to the action to the possession of the space within the bore of a tunnel where it passes through two lode mining claims beneath the surface of the earth. The Creede & Cripple Creek Mining & Milling Company was the plaintiff, and the Uinta Tunnel Mining & Transportation Company was the defendant, in the action below, and they will be so styled in this statement and in the opinion which follows. The plaintiff was the owner of two lode mining claims called the Ocean Wave and the Little Mary, which were entered for patent on August 5, 1892, and were patented on December 21, 1893. The plaintiff alleged in its complaint that these claims were duly located and discovered on January 2, 1892. The defendant was the owner of a claim to a tunnel site which extended through these lode claims beneath the surface of the earth, and which was located on January 13, 1892. It also owned certain lode claims which had been located on blind veins that had been discovered in the tunnel after the lode claims of the plaintiff had been patented. The mining claims of the plaintiff were between the portal of the tunnel and the defendant's lode claims, and the latter had driven its tunnel through the plaintiff's claim, and was using it as a way to bring to the surface of the earth the ore it was extracting from its blind veins. The real issue was whether or not the defendant had the right of way along the bore of its tunnel through the lode claims of the plaintiff, and the determination of this issue depended upon the priority of their respective claims. The plaintiff asserted that its claims were discovered and located on January 2, 1892. The defendant averred that its tunnel was located on January 13, 1892, and that no discovery of mineral in rock in place was

¶ 5. See Mines and Minerals, vol. 34, Cent. Dig. § 50.

made within the lode claims of the plaintiff until after its tunnel site was located. These averments of the defendant were stricken from the answer, and the evidence which it offered to sustain them was rejected. Exceptions were taken to these rulings, and there was a verdict and judgment for the plaintiff.

Gerald Hughes and Scott Ashton (Charles J. Hughes, Jr., on the brief), for plaintiff in error.

H. H. Lee (C. S. Thomas, A. T. Gunnell, W. H. Bryant, T. M. Patterson, E. F. Richardson, and H. N. Hawkins, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

When the claim to a tunnel site has been located before the entry of the conflicting lode mining claims which have subsequently passed to patents, is the question whether discoveries of mineral in rock in place were made within the lode claims before the location of the claim to the tunnel site open to determination by means of evidence or testimony dehors the patents? This is the principal question presented by this record. If the query were whether or not it is competent to show by proof outside the receiver's receipts or the patents that there had been no location of the patented claims or no discovery of the lodes therein before they were entered for patent, there would be no doubt that a negative answer must be returned to the question for the reason that this is an issue between the parties to a proceeding before the land department which that tribunal necessarily considers and decides when it permits the entries of the lands, and its decisions of questions within its jurisdiction are impervious to collateral attack. King v. McAndrews, 111 Fed. 860, 863, 50 C. C. A. 29, 32. This was the question which the supreme court answered in Calhoun Gold Min. Co. v. Ajax Gold Min. Co., 182 U. S. 499, 502, 503, 510, 21 Sup. Ct. 885, 45 L. Ed. 1200; and while, if the language of the opinion in that case is carelessly read without knowledge of or reference to the question actually before the court, it may seem to be broader, a careful examination of the facts which the record there discloses demonstrates the proposition that the decision went no further. In that case the receiver's receipts on the lode claims of the appellee had been issued before the claim to the tunnel site was located. Page 502, 182 U. S., and page 887, 21 Sup. Ct., 45 L. Ed. 1200. In a proceeding between the lode claimants and the United States the land department had decided that mineral in place had been discovered within the claims and had permitted their entry. Subsequent to this decision and to these entries the owner of the claim to the tunnel site located it across the lode claims, and upon the trial offered to prove that there had been no discovery of mineral in place within those claims before they were entered. The trial court rejected the offer. The supreme court said: "The ruling was right. The patents were proof of the discovery, and related back to the date of the locations of the claims. The patents could not be collaterally attacked." Thus, it may be seen that the only proposition there decided was that one who had

initiated no claim upon lands when they were entered by other claimants could not subsequently collaterally attack the decision of the land department that there had been a discovery of mineral in place upon the claims at some time before they were entered.

Counsel for the plaintiff rely upon the decision and opinion in this case, and insist that it fairly sustains the rulings of the court below. But there are radical and controlling differences between the question presented in that case and the issue of law before us in the case in hand.

1. A judgment is binding upon the parties to the proceeding in which it is rendered and upon their privies. The parties to the judgments of the land department by which it allowed the entries of the lode claims in the case of the gold mining company were the United States and the owners of those claims. No other parties had or claimed any interest in the land at the time those entries were made. The judgments and the patents accordingly bound and estopped these parties and their subsequent assignees. They estopped all parties who initiated claims upon or interests in the lands under either of the parties to the proceeding subsequent to the judgments of the land department. The claimant of the tunnel site in that case initiated its claim under the United States, one of the parties to that proceeding, subsequent to the judgments. It was therefore a privy of the United States, and was estopped by the judgments of the land department from proving that no discoveries had been made upon the lode claims before these judgments were rendered. This is not the case in the action before us. The claim to the tunnel site was located on January 13, 1892. The judgments of the land department allowing the entries were rendered on August 5, 1892. At that time there were three parties interested in the land,—the lode claimants, the United States, and the claimant of the tunnel site. Two of these parties, the lode claimants and the United States, were parties to the proceedings, and were estopped by the judgments and the patents. One of them was not a party to any of these proceedings, to the judgments, or to the patents, and, upon familiar principles, was neither bound by them nor estopped by them from presenting and proving according to the established rules of evidence in trials under the common law the fact that no discoveries had been made on the lode claims before the location of its tunnel site, the fact essential to the validity of its claim upon and interest in the land.

Not only was the claimant of the tunnel site not a party to the proceedings in the land department which resulted in the entries and patents to the lode claims, but it was neither required to become such a party nor to submit its claims and interests in the lands to the adjudication of that department at that time because its rights therein were then too uncertain, contingent, and intangible for determination. When the applications for the patents of the lode claims were filed, the blind veins which have induced the use of the tunnel through the lands in controversy had not been discovered, the tunnel had not been driven into the land, and it was impossible to know whether or not the claimant of the tunnel site would ever acquire any right to use this land for the purpose to which it is now devoted. The claim-

ant of a tunnel site is not required by sections 2325, 2326, Rev. St. [U. S. Comp. St. 1901, pp. 1429, 1430], to file an adverse claim and submit his rights in the lode claims it crosses to adjudication by the land department upon the filing of applications for patents to those claims when his rights are at that time uncertain, contingent, and intangible. Enterprise Min. Co. v. Rico-Aspen Consol. Min. Co., 167 U. S. 108, 112, 17 Sup. Ct. 762, 42 L. Ed. 96; Enterprise Min. Co. v. Rico-Aspen Consol. Min. Co., 13 C. C. A. 390, 399, 400, 66 Fed. 200, 209, 210.

2. The issue whether the discoveries in the lode claims were made before the location of the tunnel site in the Ajax Gold Min. Co. Case was necessarily considered and adjudged by the land department when it permitted the entries of the lode claims. The finding that such discoveries had been made before the date of the entries was indispensable to the decision that the lode claimants were entitled to make the entries so that that finding must have been made by the department. But the location of the tunnel site in that case was subsequent to these entries. Hence the finding that the discoveries were made before the entries was necessarily a finding that they were made before the location of the tunnel site, and it was, as we have seen, binding upon the claimant of the tunnel site, because it was claiming a right initiated after this adjudication under a party to the judgments.

It is not so in the case before us. The question here is whether or not discoveries were made in the lode claims prior to January 13, 1892, the date of the location of the claim to the tunnel site. The determination of this question was neither indispensable nor material to the adjudication made by the land department on August 5, 1892, that the lode claimants were entitled to enter the land, and there is nothing to show that this issue was ever considered or decided by that department in reaching its conclusion. The only question relative to the discoveries that it was required to determine was whether or not they had been made prior to August 5, 1892, when the entries were permitted, and the decision of that question left entirely untouched the issue in this case whether they were made before or after the location of the tunnel site on January 13, 1892.

3. When the entries were made in the Ajax Gold Min. Co.'s Case no claim to a tunnel site had been located or staked upon or across the lode claims and the entries of them, and the patents to them vested the title in the claimants free from any right or claim to a tunnel site. It is otherwise in the case at bar. The claim to the tunnel site was located and staked out across these lode claims before they were entered. Under the Revised Statutes and the law the entries and patents of these claims vested the title to them subject to the rights of the prior claimant of the tunnel site just as they vested it subject to the right of an owner of an adjoining lode claim to follow on its dip through a side line and through the patented territory of these lode claimants any vein which has its apex in his claim. Enterprise Min. Co. v. Rico-Aspen Consol. Min. Co., 13 C. C. A. 390, 400, 66 Fed. 200, 210; Mining Co. v. Campbell, 135 U. S. 286, 301, 10 Sup. Ct. 765, 34 L. Ed. 155; Hall v. Mining Co., Morr. Min. R. (3d Ed.)

p. 282; Branagan v. Dulaney, 8 Colo. 408, 412, 8 Pac. 669; Lee v. Stahl, 9 Colo. 208, 210, 11 Pac. 77; Morgenson v. Milling Co., 11 Colo. 176, 179, 17 Pac. 513.

While, therefore, it is a flagrant attack upon a patent to attempt to maintain a claim initiated subsequent to the entry on which it rests, it is no such attack to assert the rights of the claimant of a tunnel site located before the entry of the land against a patent of it to a lode claimant, because under the statutes and the law such a patent always issues subject to those rights.

Notwithstanding all these considerations counsel for the plaintiff insist that the defendant is estopped from pleading and proving that no discoveries of mineral in place were made in the lode claims before the location of the tunnel site on January 13, 1892, because certificates of location of the lode claims were filed on January 2, 1892, which declare that such discoveries were made on that day, and it is a well-settled principle that patents relate back to and take effect upon the dates of the initiation of the rights on which they are founded.

But the certificates of location are not conclusive proof of the facts which they recite against those asserting rights adverse to their makers. They are competent evidence of the fact that they were made and filed, and hence of an important link in the chain of the plaintiff's title. But when the existence of the facts which they recite is challenged they are but the ex parte statements of interested parties, and there is nothing in them or in their relation to the property or the parties to bind those claiming the lands adversely to their makers or to estop them from establishing the truth by the customary oral and written evidence. Nor is there anything in the doctrine of relation to work such an estoppel. Grant that the patents relate back and take effect as of the date of the initiation of the lode claims, yet since the patents are subject to the rights of the claimant of the tunnel site when they are issued they are still subject to those rights when they have related back to the inception of the claims upon which they rest.

Moreover, the averment of the defendant is that no discoveries were made in the lode claims until after the location of its claim to the tunnel site. If this allegation is true, it may be doubted whether the lode claims can be said to have been initiated before the claim for the tunnel site was located. "No location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located." Rev. St. § 2320 [U. S. Comp. St. 1901, p. 1424]; Enterprise Min. Co. v. Rico-Aspen Consol. Min. Co., 167 U. S. 108, 112, 17 Sup. Ct. 762, 42 L. Ed. 96. It is true that subsequent discoveries may validate earlier locations, and that the latter may then inure to the benefit of the locators as against the United States and all parties whose claims were initiated subsequent to the discoveries. But they would inure to their benefit as of the dates of the discoveries, and not as of the dates of the locations, and they would neither destroy nor affect intervening rights. The marking of boundaries and filing of location certificates may precede discovery or discovery may precede them, but no location is valid until both

are complete. The earlier act then inures to the benefit of the locator as of the date of the later, subject to all rights which have intervened between them. Erwin v. Perego, 35 C. C. A. 482, 485, 93 Fed. 608, 611; Jupiter Min. Co. v. Bodie Consol. Min. Co., 11 Fed. 666, 676, 7 Sawy. 96; 4 Morr. Min. R. 411, 423; North Noonday Min. Co. v. Orient Min. Co., 1 Fed. 522, 531, 6 Sawy. 299; Zollars v. Evans, 5 Fed. 172, 175, 2 McCrary, 39; Strepy v. Stark (Colo.) 5 Pac. 111, 114; Thompson v. Spray, 72 Cal. 528, 533, 14 Pac. 182; Erhardt v. Boaro, 113 U. S. 527, 536, 5 Sup. Ct. 565, 28 L. Ed. 1116. There was therefore no valid location of the lode claims until the discoveries within them were made, and it is held by the circuit court of appeals of the Ninth circuit in Last Chance Mining Co. v. Tyler Min. Co., 61 Fed. 557, 565, 9 C. C. A. 613, 621, that a patent for a mining claim only relates back to the time when a valid location was first made. If this is a correct view of the law, the patents in this case could not relate back to a time anterior to the dates of the discoveries, and if those were subsequent to the location of the tunnel site they could not affect defendant's rights.

If litigation for the possession of the property in controversy in this action had arisen between the lode claimants and the claimant of the tunnel site at a time prior to the entries of the lode claims, the question whether or not discoveries of mineral in place had been made in the lode claims before the location of the tunnel site would have been decisive of the issue, and the testimony of witnesses who knew the facts and other evidence competent in the customary trials of such issues at law would have been admissible to determine the question. What is there in the entries and the patents to deprive the defendant of its right to try this issue now upon like evidence? Its claim to this land had attached before those entries were made. It was not a party to the proceedings in the land department which resulted in the adjudication that the lode claimants were entitled to enter it. It was not required to file an adverse claim and to submit its rights to the adjudication of that department when the applications for the patents were made. The adjudication of the land department which permitted the entries was res inter alios acta and ineffectual to estop the defendant. The department was not required to determine and it did not decide the question here at issue, and under the statutes' and the decisions of the federal courts the entries and the patents were made subject to the rights of the claimant of the tunnel site which had attached before the land department permitted the entries. Our answer to the question which this case presents is that when the claim to a tunnel site has been located before the entry of conflicting lode claims, which have subsequently passed to patents, the question whether discoveries of mineral in place were made in the lode claims before or after the location of the claim to the tunnel site was perfected is open to determination by means of the testimony of witnesses and other competent evidence dehors the patents in any litigation between the parties involving their conflicting claims. Last Chance Min. Co. v. Tyler Min. Co., 61 Fed. 557, 565, 567, 9 C. C. A. 613, 621–623; Champion Min. Co. v. Consolidated Wyoming Gold Min. Co., 75 Cal. 78, 16 Pac. 513; Iron Silver Min. Co.

v. Campbell, 135 U. S. 286, 10 Sup. Ct. 765, 34 L. Ed. 155; Davis' Adm'r v. Weibbold, 139 U. S. 507, 11 Sup. Ct. 628, 35 L. Ed. 238.

The averments that no discoveries of mineral in place within the lode claims had been made before the location of the claim to the tunnel site should not have been stricken from the answer of the defendant and its evidence to sustain them should have been received. The question which has been considered is decisive of the issue whether or not the judgment below should be affirmed, and, as the other questions presented by the assignment of errors may not arise again, they will not now be considered.

The judgment below must be reversed, and the case remanded to the court below, with directions to grant a new trial; and it is so ordered.