[No. 6056. Decided July 13, 1906.]

SYRENUS DAVIS *et al., Respondents,* v. A. U. DENNIS *et al., Appellants.*[1]

MINES AND MINERALS — EJECTMENT — RECOVERY OF POSSESSION— PLEADINGS. In an action to recover possession of coal lands, not yet subject to entry, brought by prior discoverers, against persons unlawfully interfering with their possession, it is unnecessary for plaintiffs to allege that they were of lawful age to enter government lands, in order to state a cause of action, even though the defendants entered during the temporary absence of the plaintiffs.

SAME—POSSESSION—WHAT CONSTITUTES. Where parties had been in possession of unsurveyed coal lands each season for ten years, leaving their tools in a cabin during the winter season, intending to return, their possession is sufficient although no one was actually on the property, as against strangers unlawfully entering thereon.

[1]Reported in 85 Pac. 1079.

SAME—MINING CLAIM—ABANDONMENT.  Abandonment of a mining claim is not shown by temporary absence during the winter seasons, where for years the property was returned to every year, tools left thereon in a cabin, and the mine had been demonstrated to be of great value by the expenditure thereon of large sums of money.

SAME—OUSTER—JUDGMENT—CONSTRUCTION—RES ADJUDICATA AS TO RIGHT OF ENTRY.  In an action to recover possession of unsurveyed government mineral lands, judgment allowing the prior possessors to recover only such of the property as had been in their actual possession, their cabin, tunnels and other improvements, together with a convenient space surrounding them, does not prevent the defendants from contesting the entry before the land department, as it leaves defendants free to enter upon the mineral vein at another place.

SAME—ACTION—PLEADING—PARTIES.  In an action to recover possession of unsurveyed public mineral lands misjoinder of parties defendant is not shown by the fact that each claimed possession of different portions of the property, where the evidence showed that during plaintiff's absence, defendants took possession of the property and lived in one cabin on the immediate improvements of plaintiffs.

Appeal from a judgment of the superior court for Lewis county, Rice J., entered June 21, 1905, upon the verdict of a jury rendered in favor of the plaintiffs in an action to recover possession of unsurveyed government coal lands.  Affirmed.

*Frank A. Luse* and *Dennis & Burdick,* for appellants.
*Frank D. Nash* and *Millett & Harmon,* for respondents.

FULLERTON, J.—The respondents, who were plaintiffs below, brought this action against the appellants to recover the possession of certain unsurveyed government lands on which they had discovered a coal vein.  The lands are situated in the eastern portion of Lewis county, some sixteen miles from the nearest wagon road, some one hundred miles from a railroad, and are reached by a trail over which it is possible to take pack animals only.  The nearest corner on the government surveys is about twelve miles distant from the discovery claim.  From this corner the respondents caused a

private survey to be made, and found that the section of land they, as an association, desire to locate will be situate in sections 12, 13, 23 and 24, in township fourteen, north, of range ten, east of the Willamette meridian, when the government surveys are extended, if extended according to the system now in vogue.

The coal vein was discovered by the respondents in the summer of 1895. At that time they entered into possession of the same, built a cabin on the claim, and partially opened the vein; and yearly, since that time, down to the summer of 1903, they have returned to the property and worked the mines, opening tunnels thereon aggregating several hundred feet in length, one of which, alone, extends into the vein a distance of more than one hundred and fifty feet; the proofs showing that they have expended on the mine in its care and development more than five thousand dollars. While the respondents did not stay upon the claim during the winter season, they maintained at all times a cabin thereon (in 1900 rebuilding the previous one that had been destroyed by fire), in which they kept their tools used in working the mine, their cooking utensils, and such nonperishable articles as they found useful and necessary in developing the mine. They also erected a cabin on the trail as a way house in which to lodge while they were going to and returning from the property.

In October, 1903, after the respondents had left the property for that season, the appellants entered, taking possession of the respondents' cabin and works, and the land surrounding the same, and refused to deliver up such possession on demand made therefor. This action was thereupon brought to recover such possession. In their complaint the respondents alleged their location, entry upon, and improvement of the property; the entry of the defendants, that the same was wrongful, a demand for the possession; and prayed that they have judgment for possession and for the costs of the action. The appellants demurred to the complaint, which demurrer the trial court overruled. The appellants thereupon answered

separately, each denying the allegations of the complaint, and
pleading affirmatively that he held a certain portion of the
land described as coal lands for entry under the laws of the
United States when the same should become subject to entry;
denying, however, that the appellants held the same col-
lectively or in common, but alleging that the tract each held
and had improved was separate and distinct from that claimed
by either of the others. A reply was interposed to these de-
fenses, and a trial had before the court and jury, resulting
in a judgment of ouster against the appellants as to all that
portion of the land claimed by the respondents on which their
improvements had been made, "consisting of cabin or cabins
and of tunnels, coal mine or mines situate on both sides of
the creek running through the lands described in the com-
plaint, and the lands adjacent and near the cabin or cabins
and tunnels and mines, necessary for the development and
working of the same." It is from this judgment that this
appeal is taken.

The appellants first contend that the complaint fails to
state facts sufficient to constitute a cause of action, for the
reason that it does not appear on the face thereof that the re-
spondents are qualified under the laws of the United States
to enter coal lands, the precise objection being that it is not
alleged that respondents or any of them are of the age of
twenty-one years. We are unable, however, to concur in this
contention. It may be true that, when this land becomes
subject to entry as coal land and the respondents apply to
the government for leave to enter it as such, their qualifica-
tions as to age and citizenship to enter coal lands will be a
material inquiry, and they will have to allege and prove that
they are citizens of lawful age before they will be permitted
to make such an entry. But this is not a material question
as between them and the respondents, where nothing but the
question of prior possession is involved. In the absence of
positive law forbidding it, any person whether minor or
adult, citizen or alien, may lawfully locate upon, and take

possession of, a part of the unsurveyed public domain and rest secure in that possession until the government calls it in question. No individual or person may lawfully interfere, and the courts may be invoked to restrain unlawful interferences.

This right to maintain possession as against individuals who can acquire no higher right owes its present authority, if not its origin, to the necessity of preserving the peace of society, and of protecting the individual from arbitrary aggressions; and this being its purpose, the argument in its favor is just as potent when applied to an alien or minor as it is when applied to a citizen of lawful age. The rule has its foundation in the necessities of the state, its duty, for the sake of peace, to protect all within its borders in all lawful avocations. In this case, therefore, since the land was not subject to entry, and prior peaceable possession was the only inquiry, the respondents did not have to allege that they had the necessary qualifications to enter government lands in order to state a cause of action against the appellants. Nor is the rule changed by the fact that the appellants are in possession of the property and the respondents are seeking to oust them from such possession. The respondents allege that they were in possession, and had been in possession for a number of years, when the appellants came along, during their temporary absence, and took possession themselves. The gist of the action, therefore, is the wrongful entry of the appellants on the possession of the respondents, and it is the determination of that question that determines the right to the property; it is of no importance to inquire who may be technically plaintiff or defendant.

It is next contended that the evidence fails to show that the respondents had such a possession as would preclude the appellants from entering thereon. But we think the appellants are mistaken in this contention also. It is true that no one representing the respondents was actually on the property at the time the appellants entered, but this was not necessary

to constitute possession as against a stranger entering without right. The respondents had not abandoned the property.

Abandonment of a mining claim is where the locator goes away and leaves it without any intention of returning, having no regard for what becomes of the claim or who may appropriate it. But to leave a claim with the intent to return later is not to abandon it. Here the respondents had located the property nearly ten years prior to the appellants' entry. They had returned to it year after year, and had spent a large sum of money in the work of development. Indeed, they had gone so far in that direction as to demonstrate that the property was of great value and would become profitable as soon as title from the government could be obtained, and transportation facilities, which are promised, became available. They had caused lines to be run to it from the nearest government surveys, and thereby ascertained its exact location; and one of their number made a trip to Washington City, and there made such representations as to its location and worth as to have it exempted from a contemplated forest reserve. Under these circumstances it is idle to say that there was an abandonment, or anything more than a mere temporary absence from the property on the part of the respondents, and we think the jury rightfully found, and that the trial court rightfully adjudged, that the appellants' entry was wrongful. It must be remembered that this particular spot has no more attractions as a place on which to locate a mountain home, or abiding place, than thousands of others that could be found in the immediate vicinity which are vacant and open to the occupation of any one. Its particular attraction lies in the fact that the respondents have demonstrated that it contains a valuable coal mine, and it is for this reason that the appellants have entered upon it. They are seeking to take advantage of the respondents' labor and expenditures, and are beyond the pale of consideration in so far as there is any equity or justice in their claims. Their right must rest on the naked fact that the property was unoccupied when they entered upon

it, and inasmuch as they failed to show this fact, the judgment of ouster against them was rightfully entered.

They complain, however, that if they are ousted from their possession, they will not be permitted to contest the respondents' right to enter when the question arises before the land department, which alone has the right to finally decide who has the preference right of entry. It would seem that, if they were wrongfully in possession, this question ought not greatly to concern the court, but the judgment entered by the court below does not deprive them of the right. That court allowed the respondents to recover only such of the property as they had been in the actual possession of — the cabin, tunnels and other improvements, together with a convenient space surrounding them — not the whole section of land claimed, leaving the appellants free to enter upon the vein at another place, although within the boundaries of the respondents' actual claim. This was as favorable to them as the facts warranted.

It is claimed, lastly, that there is a misjoinder of parties. This is based on the contention that the evidence showed there was no joint possession by the appellants; that one of them was in possession of one portion of the property, and another in possession of another, as alleged in their answers. Doubtless, this is the way the appellants claimed the property and intended to divide it among themselves, but the evidence showed that they were living in one cabin on the immediate improvements of the respondents, and this being so the jury were warranted in finding a joint possession.

The judgment is affirmed.

MOUNT, C. J., HADLEY, CROW, and DUNBAR, JJ., concur.
ROOT, J., concurs in the result.